COMMONWEALTH *vs.* HIPALITO DEL VALLE
(and a companion case[1]).

Suffolk. February 5, 1968. — February 28, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Jury and Jurors. Grand Jury. Constitutional Law,* Jury, Grand jury.

The record in criminal proceedings against defendants of Puerto Rican origin did not support contentions of the defendants that the grand jury which returned the indictments and the venire of jurors did not fairly represent a cross section of the community in that persons of Puerto Rican origin had been "consistently and deliberately excluded from" grand jury and jury service, that thereby the grand jury and the venire of jurors had been selected in violation of the Massachusetts Constitution and laws and the Federal Constitution, and that motions to challenge the array of jurors and to dismiss the indictments should be allowed.

INDICTMENTS found and returned in the Superior Court on September 9, 1965.

Following the decision of this court reported in 351 Mass. 489, questions of law were reported by *Cahill,* J.

*Lazar Lowinger* for the defendants.

*Joseph R. Nolan,* Assistant District Attorney, for the Commonwealth.

---

[1] Commonwealth *vs.* Luis B. Morales.

WILKINS, C.J.  Upon these indictments for murder in the second degree the defendants were convicted.  In *Commonwealth* v. *Del Valle*, 351 Mass. 489, the judgments were reversed and the verdicts set aside.  Thereafter each defendant filed a motion to dismiss the indictments and a motion to challenge the array.  The motions were denied.  A judge of the Superior Court has reported to us certain questions of law which he deemed so doubtful and important as to require decision by this court.  G. L. c. 278, § 30A (inserted by St. 1954, c. 528).

The motion to challenge the array of jurors is based "on the ground that they do not represent a fair cross section of the community by reason of having been selected by methods contrary to the state and federal Constitutions and laws, in that persons of Puerto Rican origin, qualified to vote in this state, have been consistently and deliberately excluded from regular jury service."

The motion to dismiss the indictments is based on the grounds that they were "returned by an unconstitutionally and illegally constituted grand jury which did not fairly represented [*sic*] a cross section of the community.  This grand jury was selected in contravention of the Massachusetts Statutes . . . [and] Constitution and the United States Constitution in that for a long period of time persons of Puerto Rican origin, qualified to serve as grand jurors were consistently and deliberately excluded from serving as such."

The judge reported these additional facts.  The voting list in Boston is prepared from the list of registered voters.  Persons eligible to vote must register at City Hall, and are required, among other things, to read five lines of the Constitution of the Commonwealth in English.  The jury lists are drawn from the voting list.  According to the United States census in 1960 there were 1,980 Puerto Ricans in Boston.[1]  Every person who wishes to register must complete a questionnaire which asks for information concerning

---

[1] This was less than three-tenths of one percent of the total population.

his "birthplace — city, state, and nation." There were approximately 8,000 questionnaires completed and filed with the board of election commissioners for the years 1964, 1965, and 1966. Over a ten-year period prior to May 16, 1967, a few Puerto Ricans have completed questionnaires, although a definite number has not been fixed. "It is not known whether Puerto Ricans have been summoned for jury duty."

The grounds of unconstitutionality and illegality contended by the defendants are not lightly to be assumed. *Akins* v. *Texas,* 325 U. S. 398, 400–401. *Swain* v. *Alabama,* 380 U. S. 202, 205. See *Commonwealth* v. *Slaney,* 350 Mass. 400, 402. The judge did not find them to be true, and the record contains nothing to require such a finding. There was no evidence of systematic disqualification of Puerto Ricans for jury duty, nor of failure to call any who may have so qualified.

Proper disposition of the cases will be made by our answering the following three reported questions:

"1. Was the Grand Jury which returned the indictments in the instant case composed of members who fairly represented a cross section of the community as provided in G. L. (Ter. Ed.) c. 234, Section 1?

2. Were persons of Puerto Rican origin, qualified to serve as grand jurors, consistently and deliberately excluded from serving?

3. Was the entire Venire of jurors from which a traverse jury would be impanelled selected by methods contrary to the statutes, Massachusetts Constitution and the United States Constitution because persons of Puerto Rican origin, qualified to vote in Massachusetts, were consistently and deliberately excluded from jury service?"

To the first question we answer, "Yes." To questions two and three we answer, "No."

*So ordered.*